**DeNITTIS OSEFCHEN PRINCE, P.C.**
Stephen P. DeNittis, Esq. (SD-0016)
Ross H. Schmierer, Esq. (RS-7215)
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
T.: (856) 797-9951
F.: (856) 797-9978
sdenittis@denittislaw.com
rschmierer@denittislaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMIE ELIZABETH TRENZ,<br><br>             Plaintiff,<br>v.<br><br>FREEDOM MORTGAGE CORPORATION,<br><br>             Defendant. | Case No.:<br><br>**COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1. Plaintiff Jamie Elizabeth Trenz ("Plaintiff") brings this complaint and jury demand against the defendant Freedom Mortgage Corporation ("Defendant") for damages, injunctive relief, equitable relief, and any other relief deemed just and proper arising from Defendant's patent violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA") and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. § 64.1200.

## THE TCPA

2. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

1

3.  The TCPA regulates, among other things, the use of automated telephone equipment or "autodialers."

4.  Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

5.  The TCPA was designed to prevent calls like the ones described herein and to protect the privacy of citizens like Plaintiff. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012)("Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA.")

6.  In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102–243, § 11.

7.  In support of this, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

8.  Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy,

2

regardless of the type of call…." *Id.* at §§ 12-13.

9. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

10. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and/or prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

11. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

## **REVOKING CONSENT UNDER THE TCPA**

12. For several years, the issue of the scope and nature of "prior express consent" and whether a consumer could revoke such consent was unknown.

13. In fact, there was a significant split amongst many district courts regarding if and

how prior express consent could be revoked.

14. In 2013, however, the Third Circuit Court of Appeals squarely addressed this issue when it was called upon to resolve: (1) whether the TCPA allows a consumer to revoke her "prior express consent" to be contacted via an automated telephone dialing system on her cellular phone; and (2) if a revocation right exists, whether there is a temporal limitation on that right. *Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3rd Cir. 2013).

15. There, the defendant, Dell, argued that basic principles of contract law should preclude Ms. Gager from revoking her prior express consent because "a creditor will want to know in advance whether a credit applicant will consent to automated phone calls and that this knowledge is part of the 'consideration' that the applicant offers in support of her application." *Gager*, 727 F.3d at 273.

16. The Third Circuit Court of Appeals rejected this argument because "the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement." *Id*. at 273-74.

17. The Third Circuit Court of Appeals further held that Dell's argument that its contractual relationship with Ms. Gager somehow waives her rights under the TCPA was incorrect.

18. The Court explained that "the fact that Gager entered into a contractual relationship with Dell did not exempt Dell from the TCPA's requirements." *Id*. at 274.

19. Rather, the Third Circuit Court of Appeals held that "she retained the right to revoke her prior express consent." *Id*.

20. In addition to these arguments, Dell contended "that it would be unfair to allow a consumer to revoke her prior express consent to be contacted on a cellular phone in the debt-

collection context because the inability of a creditor to use an automated dialing system to call a borrower might make it 'difficult, if not impossible, [for the creditor] to ever contact the borrower with regard to the credit it extends.'" *Id*.

21. Once again, the Third Circuit Court of Appeals rejected this argument because it "overlook[ed] the fact that creditors are permitted to attempt live, person-to-person calls in order to collect a debt." Consequently, the Court held "Dell will still be able to telephone Gager about her delinquent account; the only limitation imposed by the TCPA is that Dell will not be able to use an automated dialing system to do so." *Id*.

22. In sum, the Third Circuit Court of Appeals in its decision that binds this Court expressly held that the TCPA allows consumers to revoke their prior express consent and there is no temporal limitation on when a consumer may revoke her prior express consent. In reaching this well-reasoned conclusion the Appellate Court found that allowing consumers to revoke their prior express consent is consistent with the basic common law principle that consent is revocable. Moreover, the Appellate Court opined that its "decision was in line with the remedial purpose of the TCPA that was passed to protect consumers from unwanted automated telephone calls." *Id*. at 269-74.

23. In addition to the *Gager* decision, the FCC issued its own Declaratory Ruling and Order further clarifying whether consent could be revoked under the TCPA. *FCC Declaratory Ruling*, CG Docket No. 02-278, FCC 15-72, June 18, 2015.

24. In its Declaratory Ruling, the FCC rejected assertions that prior express consent cannot be revoked or that revocation can only be obtained in writing. *FCC Declaratory Ruling* at ¶ 55-70.

25. In rejecting these arguments, the FCC found that consumers have a right to revoke

consent, using any reasonable method including orally or in writing. *FCC Declaratory Ruling* at 64.

26. The FCC explained that consumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke. *FCC Declaratory Ruling* at 63.

27. In sum, the FCC found that the consumer may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept. *Id*. at ¶ 70.

28. Lastly, on June 16, 2016, the Mortgage Bankers Association ("MBA") filed a Petition asking the FCC to exempt from the prior-express-consent requirement non-telemarketing residential mortgage servicing calls to wireless telephone numbers. *Mortgage Bankers Association Petition for Exemption*, CG Docket No. 02-278, (filed June 16, 2016).

29. On November 15, 2016, the FCC denied the MBA's Petition for Exemption. *Order*, CG Docket No. 02-278, DA 16-1277, (Released November 15, 2016).

30. As such, the Defendant herein does not benefit from any relevant exemptions to the strictures of the TCPA.

## JURISDICTION AND VENUE

31. This Court has federal question jurisdiction because this case arises out of violations of federal law.

32. Venue is proper in the United States District Court for the District of New Jersey, pursuant to 18 U.S.C. § 1391(b)(1) because Defendant resides within this judicial district.

## PARTIES

33. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Bexar County, Texas. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

34. Defendant Freedom Mortgage Corporation ("Defendant") is, and at all times mentioned herein was, a domestic corporation duly organized under the laws of the State of New Jersey with its principal place of business in Mt. Laurel, New Jersey. Defendant is, and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

## FACTUAL ALLEGATIONS

35. On or about January 13, 2013, Plaintiff entered into a transaction for the purchase of the property located at: 7819 Dunhill Coach, San Antonio, Texas 78255.

36. Although it is unclear from the pertinent deed history the actual identity of the entities that presently own the Note, these "investors" routinely utilize mortgage loan servicers to receive payment and communications from the homeowners.

37. In or around 2015, these investors employed the services of HomeBridge Financial Services ("HomeBridge") to handle servicing of the Note and Loan.

38. In 2015, the Plaintiff began receiving collection phone calls from HomeBridge that were frequent and annoying to her cellular telephone number, (XXX) XXX-1307.

39. In response to these annoying calls, the Plaintiff drafted and signed a letter clearly revoking any consent that she may have given to be called on her cellular telephone with an autodialer (the "Revocation Letter").

40. Although Plaintiff drafted and signed the Revocation Letter in January of 2016, it was not actually sent to HomeBridge until April of 2016.

41. On April 25, 2016, HomeBridge acknowledged receipt of the Revocation Letter and responded to the same.

42. In HomeBridge's response to the Revocation Letter, its agent expressly noted that Plaintiff had requested to no longer be contacted on her cellular telephone number "via the auto dialer."

43. Despite acknowledging Plaintiff's desire not to receive further calls via an auto dialer, HomeBridge indicated that pursuant to "investor guidelines" it would continue to call the Plaintiff on her cellular telephone and, "this contact includes being contacted via an auto dialer."

44. Almost immediately after Homebridge sent its communication acknowledging the Revocation Letter, however, the servicing of the Note was then transferred from HomeBridge to the Defendant.

45. Specifically, on May 6, 2016, the Plaintiff received a letter indicating that the Defendant would be the new servicer of the Note.

46. Notwithstanding Plaintiff's revocation of any consent she may have given to be contacted via an auto dialer in the servicing of her mortgage, the Defendant nevertheless repeatedly made collection phone calls to her cellular telephone utilizing an autodialer.

47. Beginning in or around June of 2016, Defendant incessantly and continually made illegal calls to Plaintiff flat out ignoring Plaintiff's revocation of any consent she may have given to be contacted via an auto dialer in the servicing of her mortgage.

48. Finally, Plaintiff was forced to retain counsel to threaten legal action for these patent violations of the TCPA.

49. On July 28, 2017, Plaintiff's counsel sent a demand letter notifying Defendant of Plaintiff's intention to file suit for its various and gross violations of the TCPA.

50. Following receipt of this letter threatening a lawsuit, the Defendant finally ceased its illegal conduct.

51. Nevertheless, the Defendant called the Plaintiff approximately ninety (90) times on her cellular telephone **after** Plaintiff clearly revoked consent.

52. These calls Defendant placed to Plaintiff's cellular telephone were placed via an ATDS.

53. This ATDS has the capacity to store or produce telephone numbers to be dialed, using a random or sequential number generator.

54. The telephone number that Defendant, or its agents, called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

55. These telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

56. Because the Plaintiff clearly revoked her consent, these telephone calls by Defendant, or its agents, violated 47 U.S.C. § 227(b)(1).

## COUNT I

### NEGLIGENT VIOLATIONS OF THE TCPA, 47 U.S.C. § 227, *et seq.*

57. Plaintiff incorporates by reference all of the above paragraphs of her Complaint as though fully stated herein.

58. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

59. As a result of Defendant's negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## COUNT II

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227, *et seq.*

61. Plaintiff incorporates by reference all of the above paragraphs of her Complaint as though fully stated herein.

62. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, et seq.

63. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, et seq., Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

64. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

A. On the First Count, as a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(2)(D), Plaintiff is entitled to and requests five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

B. On the Second Count, as a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(2)(D), Plaintiff is entitled to and requests treble damages, as provided by statute, up to one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

C. An Order, pursuant to 47 U.S.C. § 227(b)(3)(A), enjoining Defendant from violating 47 U.S.C. § 227(b)(2)(D);

D. Attorney's fees and costs; and

E. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: November 29, 2017            **DeNITTIS OSEFCHEN PRINCE, P.C.**

By:   *s/ Ross H. Schmierer*
      Ross H. Schmierer, Esq.
      Stephen P. DeNittis, Esq.
      525 Route 73 North, Suite 410
      Marlton, New Jersey 08053
      (T): (856) 797-9951
      rschmierer@denittislaw.com

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: November 29, 2017  **DeNITTIS OSEFCHEN PRINCE, P.C.**

By: *s/ Ross H. Schmierer*
Ross H. Schmierer, Esq.
Stephen P. DeNittis, Esq.
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
(T): (856) 797-9951
rschmierer@denittislaw.com

*Attorneys for Plaintiff*